Step up, please, and identify yourselves for the record. Good morning, Your Honors. My name is Caroline Borland, and I represent the appellant Andre Edward. Very well. Good morning, Your Honors. I'm Brian Brady, Assistant State's Attorney, on behalf of the people. All right. There will be 15 minutes aside. Save your time for rebuttal if you wish to speak in rebuttal. Good morning again, Your Honors. As I stated, my name is Caroline Borland. As this Court is aware, we have raised two issues in the briefs. I plan on focusing my attention today on the Fourth Amendment issue. I'm certainly happy to answer any questions this Court has about the sufficiency of the evidence as well. Mr. Edward's right to be free from unreasonable searches and seizures was violated in this case when the police stopped him and searched his possessions in order to see if anything criminal was occurring without having first the required requisite criminal suspicion that anything criminal was actually occurring. From the very outset, this was an unlawful detention and stop of Edward when the police commanded him to approach their vehicle and detain him up against the car without a reasonable belief of criminal activity. Why wasn't there a reasonable belief of criminal activity? There was nothing. The officer was not able to point to any specific articulable facts about criminal belief. He saw objectively innocent activity in three men walking down a public street, a sidewalk where they had the right to be not engaged in any criminal activity. You can say this with a straight face. I very much can, Your Honor. Whose property were they pushing around? They were pushing a City of Chicago trash can, apparently, is what the record says. Isn't it a crime to move a City of Chicago garbage can? Isn't there a municipal ordinance that forbids that? They did not stop them. He testified, Officer Silgato, was not breaking the law. But it's for us to determine whether there was a valid basis for the stop. That's correct. If there is a law that prohibits that type of activity, then if these defendants and this defendant and his cohorts were doing that, wasn't there probable cause to arrest them just for that? For moving the City of Chicago trash can? Yes. I think the trash cans, they have wheels in there to be moved all the time. I don't know that it is a violation. Either way, the City of Chicago just lost a case where the garbage can was in a specific spot and the woman had to go to it. And as a result, the city lost the case because they had to go too far. The whole point of it was the City of Chicago demands that the trash cans remain on their specific piece of property and not be moved on. Well, I'm concerned in this case about whether this also still was a City of Chicago trash can. It is. It was. It may have been abandoned by the City. I'm sorry, in my case. I'm talking about this case. The Chicago Municipal Ordinance provides that it shall be unlawful for any person other than a City refuse collector or private scavenger licensed by the City to remove, displace, uncover, or otherwise disturb any refuse container or contents thereof when placed on location as provided for in the section. My question then in this case would be why the officers did not stop Edward and ask him if it was his trash can, if this was his property, what was going on. There was no proof that he had violated, that he was violating that law. They said it was a City of Chicago garbage can. He said he observed that it looked like a City. He never asked these men if that was, if they were on, there's no proof that this belonged to these men, that they were on near any of their property where they lived. So they may not have been actually violating that ordinance. They were on a City street. They were on a City street, a residential neighborhood. Where they had the right to be. Now let's take it to the next step. Let's just say it's not the stop that the State initially says it is. But as to a Terry stop, once these guys started running, there you get your probable cause. So it became probable cause at some point. I don't think it's a fair characterization of the facts to say that they ran. The police got outside of the car, commanded them to approach. There was confusion. And ultimately they submitted to the police direction. There was no capture of these men. Case law distinguishes like Thomas and Wardlow. That's when these men first see the police. They engage in this headlong flight and are ultimately captured. In this case, they were allowed to not heed the officer's direction if there was no stop to begin with. So the officer pulled out, said come to the vehicle. At first there was kind of confusion. And they walked away, did not want to apparently comply with the officer's direction. But they did comply. They fully complied with what the officers were telling them to do. Eventually. Eventually. Not right away. Relatively quickly. That's true. Not right away. They did not have to if there was no detention at the beginning. In your brief you cite a line of cases that talk about that these men could fall within something that's called a very large category of presumably innocent travelers. Yes. So are you trying to tell us that there's a lot of people out there, innocent travelers pushing trash cans around at 2.30 in the morning? And that they act innocent when the police come up and they all attempt to scatter? I think any person stopped, first of all, at 2.30 in the morning. I don't know that they acted guilty. I think that's equally suspicious of acting innocent to be confused and frightened when the police stop. And I do think it's a large, heavy container with wheels and a lid. It probably is very convenient for many people to use to transport things. I was not aware, if Your Honor is correct, that that's a violation of the law. I think it's commonly used in that purpose. So, yes, many innocent travelers would do that. And also, as we've cited in the briefs, when you have a large amount of refuse to collect, it's easier to bring the trash can to that location, which is also an example of when it would be necessary to move the trash can. I think we've all seen people, junkers or people who are out collecting scrap, other things like that, who might be pushing a cart from the handy-andy, or in this case, the city of Chicago. But in either case, they're pushing something that's not their property. It belongs to somebody else. Would you agree with that? I'm slightly confused about the question. Here, are they pushing their property? Here, we're talking about a city of Chicago garbage can. It's got a serial number on it. It's paid for by the city and provided to taxpayers for their use. But whether it's a city of Chicago garbage can or a handy-andy shopping cart or Home Depot shopping cart, if there are people out there using it, they're using somebody else's property, however they came into possession of it. It could have been registered to Edward. The fact that it was in his possession and the state took down evidence that could have rebutted that and did not use it certainly also substantiates that it was his possession. He had the right to use it. There's no evidence to rebut that. And I think in both instances, the trash can or a shopping cart, it matters a lot if it had been abandoned prior to the time that these individuals were using it. Many shopping carts are abandoned. You can often, there's like on the city of Chicago website, you can request an additional trash can because your trash can has been lost. There's many times where these goods may seemingly be lost. And we don't know how long these men had been using this trash can because the police did not ask them any questions to verify that. Well, let's take this one step further. While the one officer detained your client and his cohorts, the other looked inside the receptacle and whereupon he sees a bunch of clothing that has price tags and plastic security locks on it. Doesn't that raise us to different levels? Isn't we elevated now to something more than simply a Terry stop? If it was a Terry stop, they weren't permitted to look in the trash can in the first place. Pardon me? They weren't permitted to look in the trash can in the first place. Why not? Why weren't they? Under Terry, you can only search the men in their possessions if you have a reasonable fear of danger. What expectation of privacy did your client have in the contents of the city of Chicago garbage can? He was walking down a public street, lawfully, where he had the right to be pushing a container with the lid on it. What property right did he have? He was in possession of it, and possibly, every single piece of evidence presented at the suppression hearing shows that he had the right to have a legitimate expectation of privacy in that he was pushing the trash can, he had the lid closed, he was in actual possession of that. So your position is merely being in possession, vesting with a property interest? In this case, what evidence has there been to show that he did not have a property interest? There may have been even more evidence to show that he did have the license in that, that the CO number was registered to him or one of his cohorts. Also, it may have been abandoned. The police did not take any steps to ever rebut that evidence. Every single piece of evidence presented on the legitimate expectation of privacy supports that he had that possessory interest. It's not every time there's a possessory interest, but in this case he was walking down a public street with the lid closed. No citizen would believe that police or anyone could come and simply just open up the lid and see what was inside. So I do believe in this case he certainly had a legitimate expectation. Would you agree that we could uphold the stop either on the basis of Terry or on this community caretaking responsibility? No. Even though the court below merely relied on the community caretaking responsibility? If Your Honors found that it was a valid Terry stop and that the officers did not exceed the scope of that stop, I believe that that would be permissible because this was a Terry stop. This was not a community caretaking stop. Why do you say that? Because community caretaking must be completely divorced from crime investigation. The examples are the Chicago cop, the Wisconsin police officer, after observing that he'd been in a car accident, believed they all carried guns. He went to check the glove compartment to make sure the gun wouldn't land in the wrong hands. You cannot use any suspicion. When there's an investigatory purpose, it's not community caretaking. Officer Gatto said, I thought their behavior was suspicious. I wanted to conduct a field interview. That's the Kipfer case that we've cited in the brief. It's not community caretaking when you're investigating a crime. And if it had been community caretaking, the questions were, do you guys need help? Is that your trash can? What's going on? And if they didn't want to answer, they were free to leave. This was get out of the car, turn on the lights, guys, come over to the car, I'll detain you on the car, and then search their possessions without asking them any questions at all to allow them to explain what was going on. And subsequently, they developed all of this fruit, which was used to convict Mr. Edward at trial. I see that my time is coming to a close. I would like to save time for rebuttal unless this Court has additional questions. No, that's fine. Thank you. Thank you. May it please the Court? It may. I'm Brian Reedy, Assistant State's Attorney on behalf of the people. Your Honors, the Fourth Amendment is simply not triggered in this case. The Fourth Amendment protections may be raised only by a person whose rights have been actually violated by the search itself, not by those simply aggrieved solely by the introduction of damaging evidence. In this case, it was defendant's burden to establish a reasonable expectation of privacy in the City of Chicago's trash can, which you failed to meet. As Your Honors noted in the record on pages 015, 016, it's very clear that the trial court inquired as to who owned this trash can. And the officer testified that it was a brown trash can with a serial number with the City of Chicago written on top of it. So it's undisputed that this is the City's trash can. Further, the application of the reasonable expectation of privacy factors outlined by the Supreme Court and People v. Johnson affirmed the trial court's notion that this was no reasonable expectation of privacy in the City's trash can. As counsel has stood up here and attempted to essentially infer that there may have been possession or may have been property interest, that's simply not the standard. It was their burden to demonstrate that either they had ownership or the right to use this particular piece of property on this occasion or other occasions so as to exclude others from actually being able to look inside of it. That simply has not been met. The trial court was well within its means to evaluate all the factors in this particular case and say that this was the City's trash can, which these men had no right to take from its lawful spot, as this court has alluded to. Those trash cans are to remain within their spot for residents to use and to be picked up by Streets and Sanitation, not to be taken down residential streets simply because somebody wants to take them and store items within it. They are to remain in place. Nothing in the record, nor on appeal, has changed that. Were they investigating a crime then, the police, when they saw these men pushing the cart down the street and decided to have an interaction with them? Were they looking into the possibility of a crime because they were pushing something that they didn't own? Well, as Your Honors have alluded to, the officers were within their means to do that. Simply seeing a City of trash can, which is a violation of municipal ordinance, would have been appropriate in this case, but the officers were not actually investigating, as the testimony shows here. What they saw was what was suspicious behavior. So they activated their lights, which identified themselves as officers, asked the men to come over to the vehicle. This would be properly characterized as a consensual encounter that may be elevated into a Terry stop. Simply stopping people on the street does not violate the Fourth Amendment, nor does it become a seizure automatically. What these officers did was they got out of the car, identified themselves, and wanted to inquire what these men were doing. When the men began to argue amongst themselves, walk away from each other, walk away from the trash can, then the officers asked a second time in a louder voice to come over to the vehicle. The men complied. Nothing in the facts demonstrate that this was unnecessary. As the people have alluded to in their brief, an application of the Mendenhall factors demonstrates that this was not a seizure. Did the actions of the three engender in the officers some additional suspicion then, to justify an escalation at that point? Yes, Your Honor. Looking at the facts themselves, 2.30 in the morning, three men pulling a city-owned trash can. They asked them to come over to the car. The men didn't comply. Instead of complying, they argued amongst themselves. They distanced themselves from that very trash can and attempted to walk away from the police. So yes, Your Honor, that did heighten the suspicion. And a reasonable officer would want to take a look and decide why are these men trying to flee this trash can? So by looking at the Mendenhall factors applied to this case, there's nothing to demonstrate that these men were unlawfully seized. The men were not outnumbered. I'm sorry, the men actually outnumbered the police. The police did not threaten these men with guns or violence. They did not in any way compel these men to come over to the vehicle. Were they free to go, though? I mean the brief of the defendant here at page three cites to the record and says that they were not free to leave. First of all, do you agree with that? And if you disagree with it, do you think that should affect our judgment here today? The facts are very close. I can't necessarily answer that definitively yes or no, in the sense that the facts show that there was a different timeline of events. So after the second request and they came over to the car, the officer did say they were not free to leave at that point. That would not change the analysis here in any way. At that point, you have a reasonable, articulable suspicion to justify a brief Terry stop. The touchstone of the Fourth Amendment is reasonableness. Here what we have is a brief investigative stop that's no less than two minutes. Assuming you then have escalated to a Terry stop under Section 107.14, does that carry with it anything additional in the way of a seizure of the property or inspection of the property? We're not talking about a stop and frisk. We're talking about looking into the receptacle. Your opponent seems to feel that that exceeded the bounds of a proper Terry stop. No, Your Honor, that would not change anything. The analysis is still the same. Did they establish a reasonable expectation of privacy in that item that was searched? They didn't. So whether you call it a Terry stop, a full-blown arrest, a consensual encounter, or community caretaking, it was still their burden to demonstrate a reasonable expectation of privacy in that trash can. They did not. So the Terry stop, if you will, produced no evidence. It was completely justified based on the facts in and of itself, and there's nothing here to detract from that. Unless the Court has any further questions, we would stand and ask this Court, for the reasons stated here and for those stated in our brief, to affirm the defendant's conviction and sentence. Thank you. Thanks, Counsel. Thank you again, Your Honors. First, I would like to touch a bit on this burden that Edward had  I would like to note in the cases that have been cited by the State, Rosenberg in these cases, these were examples of where the defendants were not with their container at the time it was searched. So it was expected that they would come in and testify to prove why they had an expectation of privacy in the container searched. In this case, Edward was in possession. Every single fact showed that he had a legitimate expectation of privacy. The State is kind of as a double-edged sword. We're not going to ask you any questions about your container, and then we'll use that against you at the suppression hearing. We take down the serial number that could prove you don't have a possessory interest, and then we don't use it. There's been no evidence that shows he did not have a legitimate expectation of privacy in this can. Second, just briefly, this was not a consensual encounter. When an officer uses a tone of voice and language that indicates that compliance might be compelled, it's held to be a seizure. In this case, the officers used a tone of voice and said, louder and louder, come to the vehicle, until it was complied with, and then immediately put these men up against the vehicle. What was the tone of voice that we know from the record? He said, come to the vehicle, and then when that wasn't complied with, he said it louder. That was a use of show, I'm a police officer, obey my commands,  If they had been free to leave at that point, they were permitted to leave. The officer could not keep telling them, come to the vehicle, until that was complied. It began as a seizure when they got out of the car and ordered them to come to the vehicle, and that seizure was complete when those men submitted to the orders of the police officer. That was not consent. Certainly, they never consented to search the trash can, and that's the key fact in this case, is that even if this had been a proprietary stop, there was no justification to search that trash can. They were not concerned about their safety. They did not consent, and there was no probable cause. It was a fishing expedition to see, in the officer's own words, if there was anything inside of the can. They had not asked these men any questions at all. This was a seizure on the street without questioning, and the officers took it upon themselves to see what was going on inside of that can without allowing these men any opportunity to explain. Hey guys, what are you doing with that trash can? Is that your trash can? What's going on? There was never any of that questioning here. And even after they found that evidence, they then detained the men further by handcuffing them to each other while they went to go find out if this evidence could be linked to a crime. Never any questions of, is this your clothing? Did you know this clothing was inside the can? What's going on? And then finally, I would just like to briefly say one more time about this ordinance. I was not aware of the ordinance, so if that is relevant to this court's decision, I'm happy to prepare a supplemental brief on that. But I would note, if that had been the reason for the stop, they did not ask these men any questions about if they were violating that ordinance, if they needed to use the trash can for an additional reason. And given that they did not charge these men with violating this ordinance, they must have found that they did not actually violate it. What if they didn't ask questions? If it's illegal to have the garbage can in the place where it was, what more do they need to effect a full-blown custodial arrest? I'm sorry, can you repeat the question? What difference would it have made if they'd asked questions and gotten answers? If it's against the law to have the garbage can in the place where they observed it being wheeled down the street by three individuals, and that is a basis for a violation of the law, why do they have to ask any questions about it? Because this is a right of an individual to be free from unreasonable searches and seizures. The officer said he did not observe these men breaking any laws, and he stopped them because they were searching. That's true, but we may still conclude that there was a crime that was being committed. And that would kind of, unfortunately for the officers, they happened to find the evidence of that crime. It had to be justified at the end. That's not simply the crime we're talking about. The other crime is the, the other issue here is the violation of the ordinance. It's not just the serial number and that it may have belonged to somebody else. You're not supposed to move it. It's not supposed to be moved from the place that it's assigned to. Then I would say the proper. . . But this wasn't trash day. The garbage cans were not being put on the street to be picked up by Streets and Sanitation or by some private scavenger. There's no evidence of that. I think then the proper result, since there's never been any evidence of this, even at the trial court, is to remand to allow them to establish this. And if. . . I think there's lots of exigent circumstances, such as the ones we've described, where it is necessary to move a trash can. I don't think we know enough if this had been abandoned by the city of Chicago. There's all of these factors that go into play on this. And to use now. . . The proper result would be to remand to allow a determination on this, on whether that justified the stop. But the stop had to be justified at its inception. And since there's so many variables on whether that crime was being committed and the officer did not testify that that was the reason for his stop, the proper result would be for a remand to develop that fuller. But based on this record, where he was not charged with committing that offense, where he may have very well had a reason to move that trash can, and the officers did not question them, his right to be free from unreasonable searches and seizures was violated. The police took it upon themselves to investigate activity without following the proper steps. And that activity must be punished. Not punished, but you can't use evidence from that activity against a defendant at trial. Since every single piece of evidence used against Edward was from this stop and search, this Court should ultimately reverse his conviction. Thank you. Young lady, are you fairly new to the office? No. No? Sounds like a veteran to me, Judge. No, you see, I was just saying you're very well prepared. Oh, thank you. Sometimes they're not so well prepared. Oh, thank you. No comment. The matter will be taken under advisement. We're going to take a brief recess because Judge Justice House